**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

JAMEL M. McKENZIE,

      Petitioner,

v.                                          Case No. 8:15-cv-1531-T-33JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## <u>ORDER</u>

Petitioner Jamel M. McKenzie, a state of Florida inmate proceeding *pro se*, initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. 1.) He challenges his convictions entered by the Circuit Court for the Tenth Judicial Circuit in and for Polk County, Florida.  Respondent filed a response (Doc. 17), in which it agrees that the habeas petition is timely.  McKenzie did not file a reply.  Upon review, the petition must be denied.

### PROCEDURAL HISTORY

The State charged McKenzie with second degree murder of Jerret Cole (count one), attempted second degree murder of Edward Turner (count two), and possession of a firearm by a minor (count three).  (Doc. 19, Ex. 1, Vol. I, pp. 13-14.)  A jury acquitted McKenzie of count one but convicted him of counts two and three.  (*Id.*, pp. 96-98.)  He was sentenced to concurrent terms of twenty-five years in prison on count one, and one year of incarceration on count two.  (*Id.*, pp. 156-62.)  The state appellate court *per curiam*

affirmed McKenzie's convictions and sentences.  (Doc. 19, Ex. 14.)

McKenzie filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, followed by a supplemental motion.  (Doc. 19, Exs. 18, 20.)  The state court summarily denied his motions.  (Doc. 19, Exs. 21, 23.)  The state appellate court *per curiam* affirmed the denial of postconviction relief.  (Doc. 19, Ex. 26.)

### FACTS[1]

McKenzie had a group of acquaintances that included Jerret "J-Rod" Cole and "KG" or "Ken G."[2]  Other individuals, including Edward Turner, Gabriel Polynice, Lindsy "Calin" Buckner, Antonio "Fat Tony" Buckner, and Josh Murray, were part of a different group sometimes referred to as the "Turner Boys."

Some tension existed between the two groups.  Antonio Buckner testified that he and McKenzie had had "run ins."  He testified that on October 4, 2008, when he arrived at a football game in which McKenzie was playing, McKenzie was mad and left.  That night, hundreds of people attended a birthday party at a recreation center in Winter Haven. Polynice and Lindsy Buckner testified that Lindsy Buckner had a problem with McKenzie's friend KG at the party.  Similarly, McKenzie's cousin Derrick Munson testified to friction between the groups at and after the party.  He stated that some members of the other group wanted to fight McKenzie and his friends.  He further testified that Polynice and Lindsy Buckner angrily approached either McKenzie or his friends, trying to fight, but that the confrontation was broken up.

---

[1] This factual summary is derived from the trial transcript and the briefs filed on direct appeal.

[2] KG was not identified by his full name and did not testify at trial.

Antonio Buckner also testified that he had some problems with KG at the party and that KG tried to get him to fight.  Antonio Buckner and Lindsy Buckner both testified that, when the party was over, an exchange occurred between KG and Polynice at the window of Polynice's car.  When the crowd dispersed, many people moved away from the recreation center down Avenue T towards a convenience store referred to as Crenshaws.  Munson testified that as McKenzie, Cole, and KG walked ahead of him towards Crenshaws, some members of the Turner Boys drove by and were harassing and "trash talking" McKenzie and his friends.  Munson claimed they said they would "get you all, beat you all up."

The crowd around Crenshaws was estimated at one to two hundred people.  Numerous witnesses agreed that a fight was expected there.  Edward Turner admitted that people were "fixing to fight" at Crenshaws.  Lindsy Buckner stated that Polynice and KG were getting ready to fight each other and further testified that he was "most likely" expecting to get in a fight.  Antonio Buckner stated that he "figured" a fight would take place.

Antonio Buckner testified that he and McKenzie "exchanged words" at Crenshaws.  He further testified that upon seeing this, Lindsy Buckner became angered and punched McKenzie's friend Jerret Cole, knocking Cole to the ground.  Many witnesses agreed that Lindsy Buckner punched Cole without provocation from Cole.  According to Polynice, Lindsy Buckner also had words with KG.  As Cole got up, witnesses heard gunshots.  Numerous witnesses testified that they observed McKenzie shooting a gun; Munson testified that he also saw Josh Murray fire a gun.  Cole was struck by a bullet and died as a result.  Edward Turner, who was crouching by his car, was shot through the arm,

although he initially did not realize he had been injured.

Defense witnesses Jerica Dixon, Lanelle Williams, and Deandre Evans testified that they did not see McKenzie with a gun that night, and Evans testified that McKenzie did not fire a gun.  Defense witness Jerkeisha Barton testified that the shots she heard made two distinct sounds, as if two people were shooting.  Evans also testified that he believed there might have been two different shootings, although he stated all the shooting sounded similar.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal

habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the

extent possible under law." *Cone*, 535 U.S. at 693.   In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).   *See also Cullen v. Pinholster,* 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

The state appellate court denied relief of McKenzie's claims without discussion.  The court's decisions warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.   Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster,* 563 U.S. at 181-82.  McKenzie bears the burden of overcoming by clear and

convincing evidence a state court factual determination.   "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## EXHAUSTION OF STATE COURT REMEDIES; PROCEDURAL DEFAULT

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.   28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).   A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary."  *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal

claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).   A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."   *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).  The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions.  *United States v. Frady*, 456 U.S. 152, 170 (1982).  The

petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998). Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

*Strickland*, 466 U.S. at 687.   Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance."   *Id.* at 690.   However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*  Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."   *Id.*

McKenzie must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92.  To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694.  A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only

what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

### Grounds One and Two

In Ground One, McKenzie argues that the trial court erred in denying his motion for judgment of acquittal, resulting in a federal due process violation. In Ground Two, McKenzie asserts that the trial court erred in adjudicating him guilty of attempted second degree murder, violating his federal due process rights, because the State presented insufficient evidence of guilt. Grounds One and Two are consolidated and considered as raising a substantive federal due process challenge to the sufficiency of the State's evidence for both of his convictions.

A.   Possession Of A Firearm By A Minor

On January 11, 2010, McKenzie was sentenced to one year of incarceration on this charge.  Respondent asserts that because McKenzie's sentence had expired by the time he filed his federal habeas petition on June 29, 2015, he does not meet the "in custody" requirement of § 2254 with respect to this conviction.  The Supreme Court has "interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed."  *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (citing *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)).  Consequently, the Court lacks jurisdiction to consider McKenzie's claim to the extent it involves his conviction for possession of a firearm by a minor.[3]

B.   Attempted Second Degree Murder

On direct appeal, McKenzie exhausted a substantive federal due process claim challenging the sufficiency of the evidence presented to convict him of attempted second degree murder.[4]   The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime."  *In re Winship*, 397 U.S. 358, 364 (1970).  The Supreme Court established the standard of review in a federal habeas corpus proceeding in which a petitioner challenges the sufficiency of the evidence:

---

[3] Furthermore, the claim would be barred from review.  It is unexhausted because on direct appeal, McKenzie did not challenge the sufficiency of the evidence to convict him of possession of a firearm by a minor.  (Doc. 19, Ex. 10, pp. 5-11.)  State procedural rules do not provide for successive direct appeals.  *See* Fla. R. App. P. 9.140.  Therefore, the claim is procedurally defaulted.  *See Smith*, 256 F.3d at 1138.  McKenzie does not establish the applicability of an exception to overcome the default.

[4] McKenzie makes a vague allegation of a procedural due process violation but does not elaborate on his assertion.  Any procedural due process argument is unexhausted due to McKenzie's failure to raise it on direct appeal.  (Doc. 19, Ex. 10, pp. 5-11.)  Because he cannot return to state court to file a second direct appeal, the claim is procedurally defaulted.  *See Smith*, 256 F.3d at 1138.  McKenzie does not argue or demonstrate than an exception applies to overcome the default.

> We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 – if the settled procedural prerequisites for the claim have otherwise been satisfied – the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 324 (1979).  Sufficiency of the evidence claims are governed by the substantive elements of a criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16.  "Although each element of the offense must be established beyond a reasonable doubt, *see Bishop v. Kelso*, 914 F.2d 1468, 1470 (11th Cir. 1990), the State is not required to rule out every hypothesis except that of the guilt of the defendant, *see Jackson*, 443 U.S. at 326."  *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001).  If the record contains facts supporting conflicting inferences, the jury is presumed to have resolved those conflicts in favor of the State and against the defendant. *Id.*  Accordingly, federal courts must defer to the judgment of the jury in assigning credibility to witnesses and weighing the evidence.  *Id.*

The court instructed the jury that, in order to prove attempted second degree murder of Edward Turner:

> [T]he State must prove the following two elements beyond a reasonable doubt.  Number one, Jamel Maurice McKenzie intentionally committed an act which would have resulted in the death of Edward Turner except that someone prevented the Defendant from killing Edward Turner, or he failed to do so.  Number two, the act was imminently dangerous to another and demonstrating a depraved mind without regard for human life.  An act includes a series of related actions arising from and performed pursuant to a single design or purpose.  An act is imminently dangerous to another and demonstrating a depraved mind, if it is an act or series of acts that, number one, a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another; and, two is done from ill will, hatred, spite, or evil intent; and three, is of such a nature that the act itself indicates an indifference to human life.  In order to convict of attempted second degree murder it is not necessary for the State to prove the Defendant had an intent to cause death.

(Doc. 19, Ex. 1, Vol. VI, p. 689.)

McKenzie asserts that the State failed to prove he had any ill will toward the victim, Edward Turner.[5] Preliminarily, Florida law suggests that the act of firing a weapon into a crowd in itself may demonstrate ill will. *See Pressley v. State*, 395 So.2d 1175, 1177 (Fla. 3d DCA 1981) ("Clearly, a person of ordinary judgment would know that firing a loaded gun toward a group of people is reasonably certain to kill or do serious bodily injury to another. Appellant's acts also indicated an indifference to human life and demonstrated ill will. Even though a defendant has no intent to hit or kill anyone, firing a gun into a crowd of people constitutes second degree murder when a person is killed as a result.").

Moreover, McKenzie does not establish that, under Florida law, the State was required to show ill will against the particular person who was injured when he fired into a crowd. On appeal, the State relied heavily on *Hooker v. State*, 497 So.2d 982 (Fla. 2d DCA 1986). The court in *Hooker* upheld a second degree murder conviction when the defendant shot into a trailer he believed to be occupied after he went "to the area with the avowed purpose of looking for Mexicans to run out of town." *Id.* at 983. Thus, although the court's opinion gave no indication that Hooker harbored ill will towards the particular occupant of the trailer who was shot, his ill will towards a group of people was sufficient to sustain the conviction. *Cf. Michelson v. State*, 805 So.2d 983, 985 (Fla. 4th DCA 2001) ("Upon review of the record, we hold there is no evidence of 'ill will, hatred, spite, or evil intent' directed at the victim, *or at any other person*, and therefore, the second degree murder conviction cannot stand.") (emphasis added).

---

[5] Turner testified that he had no problems with McKenzie, and that McKenzie did not aim the gun at him. (Doc. 19, Ex. 1, Vol. III, pp. 314, 316-17.)

"In most cases . . . intent must be inferred from the circumstances." *Perez v. State*, 187 So.3d 1279, 1282 (Fla. 1st DCA 2016) (addressing the state of mind necessary to demonstrate second degree murder). The State presented evidence reflecting tension between the two groups and showing that, prior to the shooting, McKenzie experienced problems with some of the Turner Boys who were present at Crenshaws. Specifically, McKenzie had a problem with Antonio Buckner earlier in the day at the football game and "exchanged words" with him at Crenshaws. The State also presented evidence that members of the Turner Boys wanted to fight McKenzie or his friends at the party, and engaged in harassment and "trash talking" while McKenzie and his friends walked to Crenshaws. Thus, the State presented evidence from which the jury could find that McKenzie had ill will towards members of the Turner Boys who were in the crowd at Crenshaws.

McKenzie further asserts that the State failed to present ballistics evidence that he shot Edward Turner, and points to witness testimony that he was not seen aiming at any particular person when he fired the gun. In support of his argument, McKenzie alleges that Turner also fired a gun. The trial transcript contains no suggestion that Turner fired a gun and shot himself in the arm. It appears that McKenzie refers to Derrick Munson's testimony that Josh Murray, who was associated with the Turner Boys, also fired a gun at Crenshaws, and now argues that it might have been Murray who shot Turner.

However, the State presented evidence that McKenzie fired a gun into the crowd. Numerous witnesses testified that they saw McKenzie do so. (Doc. 19, Ex. 1, Vol. III, pp. 267, 272-73, 293-95, 315-16, 321; Vol. IV, pp. 377, 438-41.) Additionally, crime scene technician Stacey Greatens testified that six "Winchester .45 auto spent casings" were

recovered at the scene, and that no other shell casings were found.  (Doc. 19, Ex. 1, Vol. IV, p. 493; Vol. V, pp. 494, 498.)   Munson testified that McKenzie showed him a .45 handgun earlier that day. (Doc. 19, Ex. 1, Vol. IV, pp. 363-64.)[6]

Therefore, State presented evidence from which the jury could conclude that McKenzie shot Turner.  In addition, while the jury heard some testimony that there was another shooter, the jury is presumed to have resolved any conflicting inferences from the evidence in favor of the State and against McKenzie.  *See Johnson*, 256 F.3d at 1172.

McKenzie fails to show that no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  Therefore, he has not demonstrated that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  Grounds One and Two do not warrant relief.

**Ground Four**

McKenzie alleges that trial counsel was ineffective for failing to sufficiently argue the motion for judgment of acquittal at the conclusion of the State's case.  In moving for a judgment of acquittal after the State rested, counsel argued that no evidence directly showed it was McKenzie who shot Turner, and that circumstantial evidence suggested Murray might have fired the bullet that hit Turner:

> As to Count Two, Mr. Turner didn't realize he was shot until afterwards, although he said, yes, I saw him shoot.  As to Mr. Turner, we have heard no testimony, direct testimony, that, yes, I saw him shoot Mr. Turner.  It is limited circumstantial evidence, um, with a bullet wound, but no direct testimony that it ricocheted from Josh Murray.  So, as to Count Two, I move for Judgment of Acquittal based on the lack of evidence to prove that, and the conflict in

---

[6] There was no evidence establishing what type of firearm caused Turner's injury.

the evidence.

(Doc. 19, Ex. 1, Vol. V, p. 516.)

The court denied the motion, stating that "the fact that [Turner] didn't realize that he had been shot doesn't change the fact that he was shot. There is sufficient evidence that the Defendant had a gun and was shooting it in that general direction. And that is a question of fact for the Jury." (*Id.*, p. 517.)

McKenzie now contends that counsel should have argued that his firing the weapon was merely an "impulsive overreaction" to Cole's being hit by Lindsy Buckner and to imminent danger to McKenzie,[7] but that such an "impulsive overreaction" is insufficient to create ill will under Florida law. The state court rejected this claim when McKenzie raised it in his postconviction motion. After discussing the facts of the case, the state court found:

> 9. With these facts in mind the Court returns to Defendant's legal argument. Defendant cites a number of cases in which a second-degree murder conviction was reversed with instructions to enter a judgment for manslaughter, where the evidence indicated the defendants had overreacted to some sort of provocation. The Court, having read these cases and numerous others, perceives a common thread running between them. First, the record evidence in the published cases seems to have been the subject of little or no dispute. The importance of this consideration cannot be understated. . .
>
> 10. Moreover, if one scans this body of case law it is readily apparent that in all the cases the decedent was shown to be the initial aggressor, under circumstances suggesting that the defendants *at worst* overreacted in self-

---

[7] To the extent McKenzie may attempt to argue that counsel should have included a self-defense argument in his motion for judgment of acquittal, and assuming this portion of his claim is exhausted, McKenzie is not entitled to relief. Counsel raised self-defense when he renewed the motion for judgment of acquittal at the close of the defense's case, after defense witnesses testified concerning whether two rounds of gunshots took place. He stated, "As to the second Count I think it was clear there was a gunfight going on. If in fact Mr. McKenzie was shooting he was shooting in self defense." (Doc. 19, Ex. 1, Vol. V, p. 601.) The court found "sufficient issue for the Jurors to make a determination." (*Id.*) McKenzie fails to show a reasonable probability the result of the proceeding would have been different had counsel raised a self-defense argument at the conclusion of the State's case. McKenzie therefore does not meet the standard set forth in § 2254(d) and is not entitled to relief.

defense. . . . Where there is evidence the defendant was the aggressor, a different outcome has been reached on appeal.

11.  In the present case certain important facts are disputed, but as noted above these generally involve the issue whether Defendant had a gun at all, as opposed to his motivation for firing that gun.  He did not claim to have been defending himself, or to have been defending his friend Jerret[] Cole. Neither did either side present evidence that, Defendant's silence notwithstanding, would call for a conclusion that the use of deadly force on Cole's behalf would have been reasonable, since Cole was struck only once during a fistfight.  The Court is particularly concerned that Defendant is now attempting to advance a theory of defense different than the one used at trial. . .

12.  Defendant also presents an alternative theory, which is that the evidence failed to show the requisite degree of malice necessary to support murder in the second degree.  His leading case authority is *Light v. State*, 841 So.2d 623 (Fla. 2d DCA 2003). . . . Although the Court of Appeal may have found Light's behavior to have been extremely reckless, it also noted that this fact alone cannot support a conviction for second-degree murder.  The appellate court's analysis notes the difficulty that may be experienced when drawing a line between murder and manslaughter.  The deciding factor appears to be that the evidence proved no more than Light having experienced "a serious, momentary misjudgment concerning the amount of force than was permissible."  If so, then *Light* is really another "excessive self-defense" and the history, or lack of same, between the protagonists was a fact to be afforded relatively little weight, at least standing alone.

13.  Defendant maintains that the evidence is lacking that he had any particular grudge against Edward Turner, not to mention the fact it is undisputed that he and Cole were friends.  Again, he relies primarily upon *Light*, in which the defendant and victim did not know one another.  In this opinion the Court of Appeal did observe that second-degree murder cases most commonly involve persons who have developed a feeling of personal enmity toward the victim, a situation requiring "more than an instant" to develop. . .

14.  However, as even the *Light* panel acknowledges, there are exceptions to the notion that a sour relationship must exist between the defendant and the victim, *Black* [*v. State*, 95 So.3d 884 (Fla. 2d DCA 2012)] obviously being one of these.  In fact, in *Black* the appellate court took the time to point out that second-degree murder convictions *can* be had, under the right circumstances, where the parties are complete strangers. [FN]  In the present case the evidence, while inconsistent on this precise question, showed some degree of hostility between Defendant and his friends *versus* the people

associated with Tucker [sic], existing prior to the shooting and even the party before the shooting (where some witnesses said words were passed).  One of those in the second crowd was Lindsy Buckner, who by his own admission struck J[e]rret[] Cole without particular justification.  That it was Tucker [sic] and Cole who were shot in the ensuing melee, and not Buckner, is irrelevant if all these persons were standing in a closely-packed crowd. . . . In sum, this Court concludes that the Defendant's claim of ineffective counsel is conclusively refuted by the available record.

> [FN] Another opinion worth mentioning in some detail is *Hooker v. State*, 497 So.2d 982 (Fla. 2d DCA 1986), *rev. denied*, 506 So.2d 1041 (Fla. 1987), in which the defendant was one of several persons who went to a trailer park with the stated goal of "run[ning] Mexicans out of town."  In the course of this crusade he fired a gun into a trailer he had reason to know was occupied, killing the victim, a migrant farm worker from Guatemala.  Despite the apparent lack of animosity toward the victim *as an individual*, the conviction was affirmed.  It is likely the appellate court perceived a general spirit of ill will deriving from the defendant's racism.  *Light, supra*, at 841 So.2d 626.

(Doc. 19, Ex. 21, pp. 4-6) (emphasis in original).

The record supports the denial of this claim.  McKenzie is correct that Florida courts have held an "impulsive overreaction" to an attack is insufficient to establish the state of mind necessary to sustain a conviction for second degree murder.  *See Dorsey v. State*, 74 So.3d 521, 524 (Fla. 4th DCA 2011) ("Florida courts have held that an impulsive overreaction to an attack or injury is itself insufficient to prove ill will, hatred, spite, or evil intent.") (citing *Light v. State*, 841 So.2d 623, 626 (Fla. 2d DCA 2003) and *McDaniel v. State*, 620 So.2d 1308 (Fla. 4th DCA 1993)); *see also Perez*, 187 So. 3d at 1282 ("To establish that the defendant acted with a depraved mind, the State must present evidence of circumstances showing more than an 'impulsive overreaction' to an attack.") (citing *Wiley v. State*, 60 So.3d 588, 591 (Fla. 4th DCA 2011)).

However, McKenzie does not show counsel was ineffective for not presenting this

argument as part of his motion for judgment of acquittal.  Not every overreaction precludes a second degree murder conviction.  *See Perez*, 187 So.3d at 1282 ("While the evidence showed that the shooting was a response, and indeed an overreaction, to [the victim's] challenge to a fight, the witnesses' testimony provided a basis from which the jury could find that Appellant's reaction was more deliberate than impulsive.").  Moreover, as the state court's order suggests, the prosecution presented evidence of existing animosity between McKenzie and members of the Turner Boys who were in the crowd, thereby supporting the conclusion that McKenzie harbored ill will necessary to sustain a conviction.  Because the State presented this independent basis to sustain his conviction, McKenzie does not show a reasonable probability that the court would have granted his motion for judgment of acquittal had counsel raised an "impulsive overreaction" argument.  *See Morgan v. State*, 127 So.3d 708, 718 (Fla. 5th DCA 2013) ("Courts should not grant a motion for judgment of acquittal unless there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law.") (citing *DeAngelo v. State*, 616 So.2d 440, 442 (Fla. 1993)).

McKenzie has not demonstrated that the state court's rejection of his claim was contrary to, or an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts.  He is not entitled to relief on Ground Four.

**Ground Three**

McKenzie, who was sixteen years old at the time of the offenses, contends that trial counsel was ineffective for not adequately arguing for a youthful offender sentence.  Typically, a court has discretion to sentence a qualified defendant as a youthful offender.  *See* § 958.04(1), Fla. Stat.; *Simpkins v. State*, 784 So.2d 1203, 1204 (Fla. 2d DCA 2001)

("The decision whether to sentence a defendant as a youthful offender is discretionary with the trial court."). The maximum permissible prison term under Florida's youthful offender provisions is six years. § 958.04(2)(d), Fla. Stat.

The State argued, however, that the court was required to sentence McKenzie under Florida's 10/20/Life statute. This statute provides in relevant part that an offender who, in the course of committing attempted murder, discharges a firearm resulting in injury to another shall be sentenced to a minimum term of not less than twenty-five years in prison. § 775.087(2)(a) Fla. Stat.[8]

The court also heard McKenzie's statements at the sentencing hearing, as well as the testimony of eight witnesses who spoke on his behalf. The court sentenced McKenzie as follows:

> THE COURT: Alright. Jamel McKenzie you were previously found Guilty, by jury, Attempted Second Degree Murder and uh - - there's a First Degree Felony punishable by uh - - 30 years in State Prison. And Possession of a Firearm by a Minor - - First Degree misdemeanor punishable by up to one year in the Polk County Jail. Mr. McKenzie this was a very foolish thing, not having a gun in your hand would have avoided this whole situation all together. Uh - - heard today from one person after another when they got up here that you're [a] well behaved child, that you were a great athlete, had lots of potential, everyone - - I think to a person who took the stand today was surprised to hear about this incident and stated that it was out of character for you. And uh - - just about everyone also said [he or she] thought you were redeemable. That you were a good person, had a good heart, have a chance to make something of yourself. It's a sad case because this uh - - serious [sic] of events ended up with your friend J[e]rret Cole being killed. Jury did not find you Guilty of that. Nothing of the less the serious [sic] of events ended up in Mr. Cole dying. And uh - - nothing that ever happens is going to bring him back.
>
>     But this case isn't about that, this is about the Attempted Second Degree Murder and uh - - while you - - stated you - - you didn't intend to uh -

---

[8] The jury found that during the commission of the offense, McKenzie discharged a firearm, causing great bodily harm to Edward Turner. (Doc. 19, Ex. 1, Vol. I, p. 97.)

- for any of this to happen.  You did take a gun.  You did fire that gun.  You did cause great bodily harm to Edward Turner.  For that cause uh - - I have to adjudicate you Guilty and sentence you to uh - - minimum mandatory of 25 years in Florida State Prison.  Uh - - as to Count Three Possession of a Firearm by a Minor, I adjudicate you Guilty; sentence you to one year to run concurrent.

As to what everyone said about you being redeemable you will have the time after you get out of prison to spend uh - - doing other things.  The life is uh - - about choices we make and no one will ever know everything that le[]d you to get to the point of making the decision to taking that gun and firing that night.  The statute is clear as to - - the minimum mandatory for an adult sentence in this case is 25 years and that's what I'm sentencing you to[]. . .

(Doc. 19, Ex. 1, Vol. I, pp. 146-47.)

The parties' arguments at the sentencing hearing focused on Florida's statutory provisions concerning available sentences for juveniles prosecuted as adults.  McKenzie argues that counsel was ineffective for inadequately presenting his argument because he failed to address case law providing that a court can impose a youthful offender sentence instead of the minimum mandatory term required by the 10/20/Life statute.  *See Bennett v. State*, 24 So.3d 693, 694 (Fla. 1st DCA 2009) ("[T]here is well-established case law . . . which holds that a trial court has the option of avoiding a 10/20/Life sentence, and may instead impose a youthful offender sentence."); *Ruth v. State*, 949 So.2d 288, 290 (Fla. 1st DCA 2002) ("[A] trial court may sentence a defendant to a youthful offender sentence in lieu of the 10/20/life statute's minimum mandatory requirements.") (citing *State v. Drury*, 829 So.2d 287 (Fla. 1st DCA 2002)); *Wooten v. State*, 782 So.2d 408, 409-10 (Fla. 2d DCA 2001) (minimum mandatory provisions of the 10/20/Life statute do not supersede a youthful offender sentence).

McKenzie raised this claim of ineffective assistance of counsel in his postconviction motion.  The state court identified McKenzie's ineffective assistance claim. (Doc. 19, Ex.

21, pp. 6-7.)  In rejecting his motion, it agreed with the State's response.  (Doc. 19, Ex. 23.)

That response also noted that McKenzie alleged ineffective assistance, but concluded that

McKenzie was not entitled to postconviction relief because any allegation that the trial court

erred in sentencing McKenzie should have been raised on direct appeal.[9]

      In denying postconviction relief, the state court did not expressly discuss McKenzie's

ineffective assistance argument.  The state appellate court *per curiam* affirmed the order

of denial.  The state courts' silent rejection of McKenzie's ineffective assistance claim,

however, is presumed to constitute a ruling on the merits.  *See Richter*, 562 U.S. at 99

("When a federal claim has been presented to a state court and the state court has denied

relief, it may be presumed that the state court adjudicated the claim on the merits in the

absence of any indication or state-law procedural principles to the contrary.").  McKenzie

fails to show that the state court's decision was unreasonable.[10]

      McKenzie has not demonstrated that counsel was ineffective for failing to cite any

decisions in arguing for youthful offender sentencing.  First, he has not demonstrated that

---

[9] The State's response concluded that:

> The Defendant is not entitled to the relief he seeks.  The law is that issues that were raised
> or could have been raised on direct appeal are not cognizable through collateral attack *see*
> Smith v State 445 So.2d 323, 325 (Fla.1983); *see also* Fla.R.Crim.P. 3.850(c).  A Trial
> Court's error in failing to consider Youthful Offender is cognizable on direct appeal *see* Lee
> v State, 679 So.2d 1158, 1160 (Fla.1996).  Since the Defendant could have and did raise
> the issue of his sentencing on direct appeal, he is prohibited now from brining this claim by
> Motion for Post Conviction Relief.

(Doc. 19, Ex. 22.)

[10] If the state court had not ruled on the merits of the claim, the applicable standard of review would
be *de novo* because 'the present controversy falls outside of § 2254(d)(1)'s requirement that [the federal court]
defer to state court decisions that are not contrary to, or an unreasonable application of, clearly established
federal law." *Davis v. Sec'y, Dep't of Corr.*, 341 F.3d 1310, 1313 (11th Cir. 2003).  Even assuming that *de
novo* review is appropriate, McKenzie would not be entitled to relief.  For the reasons addressed within Ground
Three, he has failed to establish deficient performance by counsel, or prejudice as a result of counsel's
performance.

counsel performed deficiently.  McKenzie does not assert that counsel inaccurately stated the law or misadvised the court concerning his eligibility for youthful offender sentencing. Moreover, even assuming that he established deficient performance, McKenzie has not established prejudice as a result of counsel's omission.  He does not show a reasonable probability that the outcome of the sentencing proceeding would have been different had counsel cited cases in support of his argument.

Defense counsel raised the issue of youthful offender sentencing and both sides presented argument to the court concerning McKenzie's qualification for such sentencing. It is not apparent that the judge thought McKenzie was ineligible for youthful offender sentencing.  Moreover, even if the judge believed as much, he gave no indication that he would have sentenced McKenzie as a youthful offender if he thought he had authority to do so.  He made no express statements to this effect, and although he acknowledged the defense witnesses' testimony, he also noted that it was McKenzie's decision to use a firearm during the offenses and that this led to Edward Turner suffering great bodily harm. (Doc. 19, Ex.1, Vol. I, pp. 146-47.)  Accordingly, any argument that the judge would have imposed a youthful offender sentence had counsel cited case law in support of his argument is speculative when considered in light of the record.  Speculation is insufficient to sustain a claim of ineffective assistance of counsel.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

McKenzie has not demonstrated that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law, or was based upon an unreasonable determination of the facts.  He is not entitled to relief on Ground

Three.

**Ground Five**

McKenzie asserts that his sentence is illegal because he "was charged by mandatory direct filing of the charging information and . . . did not have a prior adjudication for sentencing under Florida's 10/20/life law, involving a firearm." (Doc. 1, p. 13.) The substance of McKenzie's argument raises no federal constitutional challenge to the validity of his conviction. Rather, it only involves the application of Florida sentencing law. This claim, therefore, is not cognizable on federal habeas review. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief. . . . In the area of state sentencing guidelines in particular, we consistently have held that federal courts can not review a state's alleged failure to adhere to its own sentencing procedures."). That McKenzie labels his claim as involving a due process violation and references his Fifth and Fourteenth Amendment rights does not overcome the lack of cognizability. *See id.* (federal habeas review's limitation concerning state law questions "is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'") (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976)). Accordingly, Ground Five cannot provide relief.

It is therefore

**ORDERED** that McKenzie's petition for writ of habeas corpus (Doc. 1) is **DENIED**.[11]

---

[11] McKenzie seeks an evidentiary hearing. An evidentiary hearing is not warranted. *See Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of (continued...)

The Clerk is directed to enter judgment against McKenzie and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

It is further **ORDERED** that McKenzie is not entitled to a certificate of appealability (COA). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, McKenzie "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). McKenzie has not made the requisite showing in these circumstances. Finally, because McKenzie is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** at Tampa, Florida, on September 16, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Jamel M. McKenzie
Counsel of Record

---

[11](...continued)
the state court, based solely on the state court record.").